## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

**JESSIE JAMES DUPLANTIS**       **CASE NO. 6:17-CV-01558 SEC P**
**#318660**

**VERSUS**       **UNASSIGNED DISTRICT JUDGE**

**DARREL VANNOY**       **MAGISTRATE JUDGE HANNA**

### REPORT AND RECOMMENDATION

Pro se petitioner Jessie James Duplantis, a prisoner in the custody of Louisiana's Department of Corrections, filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. §2254 on November 28, 2017.   Petitioner attacks his 2012 conviction for sexual battery and the life sentence imposed thereon by the Fifteenth Judicial District Court, Vermilion Parish. This matter has been referred to the undersigned for review, report, and recommendation, in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court.  For the following reasons it is recommended that the petition be **DISMISSED WITH PREJUDICE**.

### *Factual Background*

The facts, as set forth by the Louisiana Third Circuit Court of Appeal, *State v. Duplantis*, 13-424 (La. App. 1 Cir. 06/07/13) 127 So.30 143, are as follows:

H.C.[1] was referred for counseling with Rachel Hinton, a licensed professional counselor and licensed marriage and family therapist. H.C. indicated to Ms. Hinton he had been inappropriately touched by his brother and one time by the defendant, his mother's boyfriend. Ms. Hinton stopped the questioning and notified H.C.'s Office of Child Services (OCS) worker.

Nicholette Joseph testified at trial as the representative of Hearts of Hope, a children's advocacy center. She interviewed H.C. on June 2, 2010, when H.C. was six years old. The state played the videotaped interview to the jury over the defendant's objection. On the video, H.C. said he could not live with his mom because she had a boyfriend, Jessie James Duplantis, the defendant, who did 'mean things.' H.C. first said the defendant touched his private four times, and his brother Blake touched him four times. He said the first time the defendant touched him, he was four years old; the last three times, he was three. H.C. first said the defendant touched him all over on the private, keeping his hand still. Then he said the defendant touched his private with a paddle with H.C.'s clothes on and again with his hand with H.C.'s clothes off.

After H.C. made those comments, he asked to 'start all over.' He pointed to where he said the defendant touched him, and this time, he said the defendant moved his hand. Ms. Joseph presented H.C. with a forensic drawing of what H.C. described as a boy with no clothes. Ms. Joseph told H.C. the boy had no clothes on because he just got out of the bathtub. H.C. circled the area where he said the defendant touched him, and he called it his 'bird.' He said the defendant touched his skin inside his clothes. His mother and brother were at home when this occurred. When asked what room of the trailer, where they lived, these acts occurred, H.C. answered only, 'in the trailer.'

When Ms. Joseph asked H.C. if he had told his mom, aunt, and granny about what happened, H.C. nodded and said 'they got mad.' He felt bad that he could no longer talk to the defendant. Toward the end of the interview, H.C. said he was in the bathtub when the defendant came in, touched his private, and 'that was it.'

---

[1] The victim's initials are used to protect his identity in accordance with La. R.S. 46:1844(W).

H.C. also testified at trial after the trial judge questioned him about the difference between the truth and a lie. He was nine years old and in the fourth grade at the time of trial. H.C. used to live with his biological mother, Valerie Chauvin, and the defendant was her boyfriend. When H.C. looked around the courtroom twice, he testified he did not see the defendant. He then identified the defendant.

The defendant objected and asked for a mistrial. Apparently, someone in the audience made a comment defense counsel thought influenced H.C. Regarding H.C.'s identification of the defendant, the record states:

Q Do you see Mr. Jessie in the courtroom? Look around.

A I don't see.

Q You looked all over? You need to stand up to look?

A I don't see him.

Q You don't see him?

A No.

Q You still don't see him anywhere?

A Right there (indicating).

Q Okay. Where are you pointing? What color shirt does he have on?

A White.

Q Does he have a tie or does he not have a tie?

A He does.

BY [the State's counsel]: Let the record reflect that he's pointing to the defendant wearing a tie.

3

BY [Defendant's counsel]: May we approach?

BY THE COURT: All right.

(WHEREUPON, THE FOLLOWING WAS TAKEN AT A SIDEBAR OUT OF THE HEARING OF THE JURY.)

BY [Defendant's counsel]: I need it reflected for the record that I wanted to do this out of the presence of the jury because I didn't want to point it out any further to them, but the child only pointed out the defendant after he stood up and after at least one of the ladies, who's directly behind me — and although I almost always have tunnel vision for these kind of things — even I could hear her say where he was sitting and what he was wearing.

BY THE COURT: I could hear something, but I couldn't tell what was said.

BY [the State's counsel]: I didn't see it; I'm sorry.

BY [Defendant's counsel]: I could hear it and that's unusual for me.

BY THE COURT: I think Autumn might have heard it, too, because her eyes got real big after the lady made a remark.

BY [the State's counsel]: You want me to ask her to come up?

BY THE COURT : You want her to come over?

BY [Defendant's counsel]: Well, I think the damage is done now. So I think I have no choice but to ask for a mistrial.

BY THE COURT: It would be whether the boy heard her, though.

On further questioning, H.C. commented 'he thought [the defendant] was going to be in handcuffs and his handcuffs the legs, too. [sic] But he was kind of sad that — it wasn't a dream, no.' When asked if he heard anyone in the room tell him where the defendant was situated in the courtroom, he replied the state's counsel had told him 'to look better and then I didn't see him. Then I looked, then I saw.'

4

H.C. testified the defendant stayed at the trailer with him and his mother '[sometimes].' When asked whether the defendant ever stayed at the trailer with H.C. by himself, H.C. responded, 'I guess.' H.C. testified the defendant did something that he wasn't supposed to do . . . He did something wrong and then he got in trouble . . . Touched something that he wasn't supposed to . . . The private.' They were in the bathroom; H.C. 'was taking a bath and [defendant] just — he just did it on purpose.' H.C. did not need help cleaning his 'private.' This happened '[l]ike maybe once — one time.' H.C. did not recall if he had ever told anyone it happened more than once.

The defendant's girlfriend, H.C.'s natural mother, was Valerie Chauvin. Valerie's brother and his wife, also named Valerie, adopted H.C. in 2011.  H.C. referred to the women as his 'old mom' and his 'new mom.' His new mom told him to '[j]ust tell the truth and don't lie' about the touching incident.

The trailer where H.C. lived was in the same yard as his grandmother, 'Granny Betty.' His older brother, Blake, also lived in the trailer; H.C. said Blake was thirteen. H.C. sometimes took baths at Granny Betty's house. H.C. testified his memories were 'kind of old and fuzzy.' He further testified that he did not have a conversation with his brother, Blake, about the incident. On cross-examination he stated he did not remember a conversation with Blake, then stated he had no conversation about his testimony with his older brother. During follow-up with the state's attorney, H.C. said it was true that the defendant touched his private, his mom and dad just told him to tell the truth, and he was telling the truth then.

Keith Bedwell, the defendant's probation officer, testified he had supervised the defendant after he pled guilty to two counts of indecent behavior with a juvenile on April 3, 2006. One of the charges dealt with behavior in 1996. Mr. Bedwell also testified the defendant pled guilty on November 2, 1992 to carnal knowledge of a juvenile. He believed the defendant lived in a trailer in Abbeville with his wife, Valerie, at the time of the probation supervision. One of the rules of the defendant's probation was to have no contact with juveniles; no juveniles could visit or come inside 'the place that he

5

was registered as a sex offender.' The trial judge instructed the jury to consider that information only for the limited purpose of whether it tended to show a lustful disposition toward children.

The defendant's wife, Valerie, testified at trial. The couple was married on June 18, 2010. Valerie lived in a FEMA camper in 2007 and 2008. The defendant lived with his mother in 2006, with Terry Bessard in 2007, and with Valerie's parents in their home from January 8, 2008 to March 3, 2008. She said the defendant never lived with her at her parents' home because of the orders of the defendant's probation officer. Valerie understood the defendant was not to live with H.C. She testified the defendant spent time with Valerie's children only '[w]ith other adult supervision, and he was never alone with H.C. She further testified that she bathed H.C. at her parents' home because their FEMA trailer had no hot water.

Although Valerie knew about the defendant's first conviction, she did not consider him to be a sex offender until '[a]fter his second charge.' H.C. was taken from Valerie's care because someone reported to OCS the defendant had babysat him; Valerie testified the defendant 'did not babysit [her] children.'

Blake Bourque, H.C.'s half-brother, was fifteen at the time of trial. Blake testified he lived with H.C. '[f]rom the day [H.C.] was born to 2007,' and the defendant lived with Blake's grandparents. To Blake's knowledge, the defendant was never alone with H.C. The defendant started coming around in 2007, after H.C.'s dad died on August 17, 2007.

Blake testified that at a get-together at his great-grandmother's home earlier in the year, H.C. pulled Blake aside and said he wanted to talk to him. Blake said H.C. was about to cry, and he told Blake 'he had been lying . . . about the whole situation about [the defendant] touching him.' H.C. said his uncle had really done it. Blake testified he asked H.C. if he had talked to his adoptive parents about it. H.C. said he had, and '[t]hey didn't say nothing.'

Frank Duplantis, the defendant's brother, testified he saw the defendant '[p]retty much everyday' in 2007 and 2008 while the defendant was staying with their mother. He said the defendant was

6

not staying in the FEMA camper with Valerie. Frank said he never saw Valerie's children at his mother's house. He believed he would know if the defendant had been alone with the children, and he had not been to Frank's knowledge. On cross-examination, Frank testified he was '[n]ot a hundred percent' sure the defendant had not been alone with the children, but he was 'pretty sure he wasn't.'

Timothy Duplantis, also the defendant's brother, testified the defendant had 'just got out of jail' in 2007 and 2008. He first lived with their mother and then 'rented a little apartment' in town. The defendant returned to his mother's house, then moved to Bessard's house. He never lived with Valerie during that time, and he was not alone with Valerie's children. Several other witnesses, including Valerie's father and the defendant's mother, also testified other adults did not live in Valerie's home, and the defendant was not alone with Valerie's children.

Valerie Chauvin, H.C.'s adoptive mother, testified H.C. '[n]ever, never' told her his uncle, and not the defendant, touched him. H.C. never said he had a conversation with Blake on this topic. Ralph Chauvin, H.C.'s adoptive father, testified the same.

### *Procedural Background*

On September 14, 2010, Duplantis was indicted on one charge of sexual battery, in violation of La. R.S. 14:43.1, for the sexual battery of H.C. The indictment was amended on January 14, 2011, to allege that the offense occurred between November 2007 and January 2008.

Petitioner was found guilty as charged by a jury on September 12, 2012, in the Fifteenth Judicial District Court, Vermilion Parish, and sentenced to life in prison, in Docket Number 53049. He filed a direct appeal in the Third Circuit Court of Appeals, bearing Docket Number 13-424 on an unknown date, raising the

following issues: (1) insufficient evidence; (2) admission of evidence of convictions of other crimes was error; (3) trial court erred in allowing a recorded interview of the minor child to be introduced when it was not provided to the defense prior to trial; (4) verdict was unconstitutional, as it was not unanimous; and (5) excessive sentence.   On November 27, 2013, the Third Circuit affirmed the sentence and conviction. *State v. Duplantis*, 2013-424 (La. App. 3 Cir. 11/27/13), 127 So.3d 143. Petitioner applied for writs of certiorari in the Louisiana Supreme Court, and on September 19, 2014, his writ application was denied.  *State v. Duplantis*, 2014-KH-0283 (La. 9/19/14), 148 So.3d 949.  He did not apply for certiorari in the United States Supreme Court. [Rec. Doc. 1, p.2, ¶9(h)]

Petitioner filed an application for post-conviction relief in the trial court on June 30, 2015 [Rec. Doc. 5-1, pp. 3-34], which was denied on November 19, 2015. [Rec. Doc. 5-1, pp. 39-41] The following issues were raised: (1) ineffective assistance of counsel due to conflict between petitioner and court appointed trial counsel; (2) ineffective assistance of counsel due to trial counsel's failure to file a motion to quash the amended indictment for lack of true bill endorsement by the grand jury foreman; (3) ineffective assistance of counsel for failure to file motion to quash indictment not brought in open court by grand jury; (4) ineffective assistance of counsel for failure of trial counsel to sufficiently cross-examine the minor victim

as to his prior videotaped interview and trial testimony; (5) ineffective assistance of counsel prior to start of trial; and (6) ineffective assistance of counsel, in general.

On or about November 23, 2015, petitioner filed a "Motion for Expedited Hearing, Transcripts, Copy of Judgment and Extension of Time under Rule 4-2" in the trial court. [Rec. Doc. 5-1, pp. 42-44] On December 10, 2015, the trial court ordered that petitioner's motion be granted - that a copy of the transcript be provided to him and that his time for filing his writ in the Third Circuit be extended to December 16, 2015[1]. [Rec. Doc. 5-1, p. 46]

On December 16, 2015, petitioner timely filed a writ application in the Third Circuit Court of Appeal, Docket Number KH-15-0119 [Rec. Doc. 5-1, pp. 51-76], which was denied on March 28, 2016, as deficient and not in compliance with La. Code Crim. P. art. 912.1(C),  Uniform Rules –  Courts of Appeal, Rules 4-5 and Third Circuit Internal Rule 16.  [Rec. Doc. 51, p. 81]  According to the Third Circuit, petitioner's writ application did not contain a copy of the petitioner's Application for Post-Conviction Relief filed in the trial court, a copy of the State's response to

---

[1]Petitioner notes that he has never received a copy of the transcript in this matter.  On January 20, 2016, he filed a Motion for Enforcement of Court's Order, seeking the transcript. [Rec. Doc. 5-1, pp. 47-49]  It is well established that an indigent defendant does not have a constitutional right to a free copy of his transcript or other court records for use in a collateral proceeding. See *United States v. MacCollom*, 426 U.S. 317, 96 S.Ct. 2086 (1976); *Bonner v. Henderson*, 517 F.2d 135, 136 (5th Cir.1975).  Moreover, petitioner does not argue that he was unable to prepare his writ application due to the lack of transcript.

same, a copy of petitioner's "original traverse" filed with the state court, a date-stamped copy of the "Motion for Expedited Hearing Transcripts Copy of Judgement and Extension of Time Under Rule 4-2," filed with the trial court, or a copy of the transcript of the November 16, 2015 post-conviction relief hearing. *Id.*

On April 21, 2016, he filed an application for supervisory and/or remedial writs in the Louisiana Supreme Court [Rec. Doc. 5-1, pp. 86-112]. The Supreme Court denied his application on September 22, 2017, holding that he failed to show any lower court error. *State ex rel. Duplantis v. State*, 16-KH-0874 (La. 9/22/17), 226 So.3d 448.

Petitioner filed the instant petition on November 28, 2017, raising the following claims: (1) insufficient evidence; (2) admission of evidence of convictions of others was error; (3) trial court erred in allowing a recorded interview of the minor child to be introduced when it was not provided to the defense prior to trial; (4) verdict was unconstitutional, as it was not unanimous; (5) excessive sentence; (6) ineffective assistance of counsel due to conflict between petitioner and court appointed trial counsel; (7) ineffective assistance of counsel due to trial counsel's failure to file a motion to quash the amended indictment for lack of true bill endorsement by the grand jury foreman; (8) ineffective assistance of counsel for failure to file motion to quash indictment not brought in open court by grand jury; (9) ineffective assistance of counsel for failure of trial counsel to sufficiently cross-

examine the minor victim as to his prior videotaped interview and trial testimony; (10) ineffective assistance of counsel prior to start of trial; and (11) ineffective assistance of counsel, in general.

### *Law and Analysis*

## I.    Standard of Review - 28 U.S.C. § 2254

The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, 28 U.S.C. § 2254, governs habeas corpus relief. The AEDPA limits how a federal court may consider habeas claims. After the state courts have "adjudicated the merits" of an inmate's complaints, federal review "is limited to the record that was before the state court[.]" *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).

To overcome AEDPA's relitigation bar, a state prisoner must shoehorn his claim into one of its narrow exceptions. *Langley v. Prince*, 3019 U.S. App. LEXIS 17082, __ F.3d __, 2019 WL 2384169, *16 (5th Cir. 2019).  As relevant here, he must show the state court's adjudication of the claim "resulted in a decision that was [1] contrary to, or [2] involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *Id*.; 28 U.S.C. § 2254(d)(1).

The first exception to the relitigation bar—the "contrary to" prong—is generally regarded as the narrower of the two. *Id*. A state-court decision is "contrary to" clearly established federal law only if it "arrives at a conclusion opposite to that

reached by [the Supreme] Court on a question of law or if" it resolves "a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id*. (*citing Terry Williams v. Taylor*, 529 U.S. 362, 413 (2000).

The other exception to § 2254(d)(1)'s relitigation bar is the "unreasonable application" prong, which is almost equally unforgiving. *Id*. at \*17. The Supreme Court has repeatedly held that it is not enough to show the state court was wrong. *Id.; see also*, *Renico v. Lett*, 559 U.S. 766, 773 (2010) ("[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." (quotation omitted)); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold."). Rather, the relitigation bar forecloses relief unless the prisoner can show the state court was so wrong that the error was "well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id. (citing Shoop v. Hill*, 139 S. Ct. 504, 506 (2019) (per curiam) (quotation omitted). In other words, the unreasonable-application exception asks whether it is "beyond the realm of possibility that a fairminded jurist could" agree with the state court. *Id*. at \*18 (*citing Woods v. Etherton*, 136 S. Ct. 1149, 1152 (2016) (per curiam); see *also Sexton v. Beaudreaux*, 138 S. Ct. 2555,

12

2558 (2018) (per curiam) (asking "whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court" (quotation omitted)).

Overcoming AEDPA's relitigation bar is necessary but not sufficient to win habeas relief. Even after overcoming the bar, the prisoner still must "show, on de novo review, that [he is] 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Id. (citing Salts v. Epps*, 676 F.3d 468, 480 (5th Cir. 2012) (quoting 28 U.S.C. § 2254(a)); *see also Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010) ("[A] habeas petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on de novo review [under] § 2254(a).").

Section 2254(d)(2) speaks to factual determinations made by the state courts. Federal courts presume such determinations to be correct; however, a petitioner can rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## II.    Claims

### A.  The State failed to present sufficient evidence to support the verdict.

Duplantis first argues that the evidence presented was insufficient to support a verdict of sexual battery, as the other witnesses who testified that the crime occurred all obtained their information from H.C., the minor victim, who was only four years old at the time the offense allegedly occurred and nearly six when he made the accusations during the Hearts of Hope interview. The Third Circuit, affirming the

conviction and sentence, found that the victim's video statement and court testimony, when taken as a whole, were consistent enough for a reasonable finder of fact to find his testimony credible. *State of Louisiana v. Duplantis,* 13-424, (La. App. 3 Cir.), 127 So.3d 143.

*Jackson v. Virginia*, 443 U.S. 307 (1979), provides the appropriate United States Supreme Court standard for consideration of a claim of insufficient evidence. Under *Jackson*, a federal habeas court addressing an insufficiency of the evidence claim must determine, after viewing the evidence in the light most favorable to the prosecution, whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. *Id*. at 319; *Williams v. Cain*, 408 F. App'x 817, 821 (5th Cir. 2011); *Perez v. Cain*, 529 F.3d 588, 594 (5th Cir. 2008). Thus, to determine whether the commission of a crime is adequately supported by the record, the Court must review the substantive elements of the crime as defined by state law. *Perez*, 529 F.3d at 594 (*citing Jackson*, 443 U. S. at 324 n. 16).

The Court's consideration of the sufficiency of the evidence extends only to what was presented at trial. *See McDaniel v. Brown*, 558 U.S. 120, 131 (2010) (recognizing that a reviewing court must consider the trial evidence as a whole under *Jackson*); *Johnson v. Cain*, 347 F. App'x 89, 91 (5th Cir. 2009) (*Jackson* standard relies "upon the record evidence adduced at the trial") (*quoting Jackson*, 443 U.S. at

324).   Review of the sufficiency of the evidence, however, does not include review of the weight of the evidence or the credibility of the witnesses, because those determinations are the exclusive province of the jury. *United States v. Young*, 107 F. App'x 442, 443 (5th Cir. 2004) (citing *United States v. Garcia*, 995 F.2d 556, 561 (5th Cir. 1993)); *see Jackson,* 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts").   All credibility choices and conflicting inferences must be resolved in favor of the verdict. *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005).

A federal habeas court is not authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses in place of the fact-finder. *Weeks v. Scott*, 55 F.3d 1059, 1062 (5th Cir. 1995); *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985). In addition, "[t]he *Jackson* inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.'" *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (quoting *Herrera v. Collins*, 506 U.S. 390 (1993)).

A claim of insufficient evidence presents a mixed question of law and fact. *Perez*, 529 F.3d at 594.  Therefore, this Court must examine whether the state courts' denial of relief was contrary to, or an unreasonable application of, United States Supreme Court precedent.

Petitioner argues that the minor victim was the only person to testify that he committed the sexual battery and that all other witnesses' testimony obtained their information from the victim. Here, the state appellate court found that the jury obviously believed H.C.'s testimony. *State v. Duplantis*, 127 So.3d at 150.  It had the opportunity to assess H.C.'s credibility and the credibility of his brother, his mother, and the other witnesses and concluded that Duplantis was guilty as charged. *Id.* Addressing Duplantis' argument that H.C.'s testimony was inconsistent with the statement he gave in the interview he gave at Hearts of Hope, the appellate court, after reviewing both the video statement and the victim's court testimony, found these statements, when taken as a whole, were consistent enough for a reasonable finder of fact to find his testimony credible. *Id.*  The jury believed H.C.'s testimony regarding the offense. The Third Circuit applied the *Jackson* standard of review and found that there was sufficient evidence to support the jury's finding of guilt.  *Id.*

When this Court reviews that decision through the additional deference due the state court's decision under Section 2254(d), habeas relief is not permitted.  Even if a jury could have interpreted the evidence in the fashion that Petitioner suggests, his jury made a reasonable decision that the evidence instead proved that Petitioner was guilty as charged. The state court's review of the jury's verdict was based on a reasonable assessment of the evidence and application of *Jackson*, so habeas relief is not permitted.

**B. The admission of evidence of prior convictions was error.**

Petitioner next argues that the trial court erred by admitting evidence of his prior convictions of carnal knowledge and sexual battery. He contends that the jury "concentrated on the prior convictions and not the evidence produced at trial." [Rec. Doc. 1-4, p. 13]

Louisiana Code of Evidence Article 412.2(A) allows evidence of prior convictions in order to "indicate a lustful disposition toward children" when the defendant "is charged with a crime . . . involving a victim who was under the age of seventeen at the time of the offense[.]" The evidence may still be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice[.]" La. Code Evid. art. 403. While the defendant objected to the admissibility of the evidence at trial, he did not make any objection regarding the failure to conduct the balancing test of article 403, as he does on appeal.

The trial court allowed evidence of the defendant's guilty pleas to two counts of indecent behavior with a juvenile, made in 2006. The factual basis of the plea in one count was that the defendant "engaged in the commission of any lewd or lascivious act upon the person or in the presence of a child whose date of birth was 9/1 of 1985 where there was an age difference of greater than two years[.]" *See* Transcript of April 3, 2006, Boykinization Hearing, Rec. Doc. 10-5, pp. 31-32; *see also* Notice of Intent to Introduce Evidence of Similar Crimes, Wrongs or Acts in

Sex Offense Case, Rec. Doc. 10-5, p. 58.  The factual basis in the second count was that, "during the year 1996, [the defendant] engaged in a lewd or lascivious act with a child whose date of birth was September 1, 1985, when there was an age difference of greater than two years[.]"  *Id.*    The trial court also allowed evidence of a November 2, 1992 guilty plea, which resulted in a conviction on a charge of carnal knowledge of a juvenile. The factual basis of the plea was "that between January 1 and December 25, 1989, Jessie Duplantis did commit the crime of Felony Carnal Knowledge of a Juvenile and was convicted of said charge (docket no. 26530) on the 2nd day of November, 1992 in the 15th Judicial District court, Vermilion Parish." Rec. Doc. 10-5, p. 58.

In allowing the evidence related to the prior convictions, the trial court relied on *State v. Williams*, 11-876 (La. App. 5 Cir. 3/27/12), 91 So.3d 437, *writ denied*, 12-1013 (La. 9/21/12), 98 So.3d 334.  [Rec. Doc. 10-5, p. 117]  In *Williams*, the trial court allowed evidence of a defendant's prior conviction of carnal knowledge of juvenile, a thirteen-year old girl,  in his trial on the charge of molestation of a juvenile, a nine-year old girl.  The appellate court affirmed the trial court's finding that the cases were sufficiently similar for the evidence to be admissible under La. Code Evid. Art. 412.2(A), and that the passage of time since the prior conviction did not call for exclusion of the evidence.

Immediately following the admission of the evidence of prior convictions in the instant matter, the trial judge gave the jury a limiting instruction:

> Evidence that the defendant was involved in the commission of offenses other than the offense for which he is on trial is to be considered only for a limited purpose. The sole purpose for which such evidence may be considered is whether it tends to show a lustful disposition towards children. Remember the accused is on trial only for the offense charged. You may not find him guilty of his offense merely because he may have committed another offense.

[Rec. Doc. 10-110, p. 184.]

The instructions given to the jury at the conclusion of the trial included the same language. *Id.* at p. 251.

On direct appeal, the Third Circuit held that the evidence of prior crimes showed the defendant's lustful disposition toward children and, in fact, this instance showed the fourth time the defendant was involved in committing a sexual act on a child. *State v. Duplantis*, 127 So.3d at 152. Considering the trial court's limiting instruction, the appellate court held that the trial court did not err in allowing evidence of the prior convictions. *Id.*

The petitioner fails to show how the instruction did not comport with Article 412.2's requirements. Accordingly, this portion of the claim also offers no basis for federal habeas relief.

**C. The trial court erred in allowing a recorded interview of the minor child (victim) over objection when the interview was not provided to the defense prior to trial during discovery.**

Petitioner states that during the trial, the State's third witness, Reginald Reed, the evidence custodian with the Vermilion Parish Sheriff's Office, testified that Sergeant James Gleason delivered three (3) DVDs to him, one of which was an interview of the minor victim by Nicholette Joseph, of the children's advocacy center, Hearts of Hope. The defense objected to the introduction of the DVD on the basis that it had never been given to the defense and that the defense had no knowledge of the DVD until that moment. The State argued that defense counsel knew about the video because it was part of the open file discovery and that he talked to defense counsel about the video the week of trial, asked if her client had viewed it, and asked if she wanted to view it, to which she "said no." Rec. Doc. 10-110, p. 121, lines 26-32.

The defense attorney disagreed with this rendition of the facts, contending that she had "nagged [the state's counsel] repeatedly if they had any protected person video and was consistently told they did not have it." *Id*. at p. 122, lines 7-10. The state's counsel argued that the open file discovery included "talk about the interview," and a witness told of conducting it. *Id*. at lines 29-32. Additionally, the police report referred to the interview and the recording it. *Id*. at p. 126, lines 13-30. Thus, the state's attorney contended that defense counsel had notice of the need to file a motion to obtain the video. *Id*. at pp. 126-127. Nevertheless, as noted by the Third Circuit on direct appeal, correspondence dated February 15, 2011, from

20

the state's attorney to the defense counsel referred to only two videos, those of the defendant and Valerie Chauvin.  Rec. Doc. 10-20, p. 19.

The trial judge found that defense counsel had received discovery that included "referrals to the existence of that video."  Rec. Doc. 10-110, p. 130, lines 27-32.   Accordingly, prior to the State offering it into evidence, the court allowed defense counsel time to view the video, stating:

> As to the video of the victim at Hearts of Hope, there is in discovery that you have received, Ms. Veazey - - there are referrals to the existence of that video.  Now, if you haven't seen it, what I'm going to do at this point is allow you to view it now and raise any objections after you view it as to the prejudicial effect of viewing it at this late point in time.

Rec. Doc. 10-110, p. 131, line 27- p. 131, line 3.

Following defense counsel's viewing of the video, the Court allowed its introduction, pursuant to La. R.S. 15:440.5, which states, in pertinent part:

A. The videotape of an oral statement of the protected person made before the proceeding begins may be admissible into evidence if:

> (1) No attorney for either party was present when the statement was made;
>
> (2) The recording is both visual and oral and is recorded on film or videotape or by other electronic means;
>
> (3) The recording is accurate, has not been altered, and reflects what the witness or victim said;
>
> (4) The statement was not made in response to questioning calculated to lead the protected person to make a particular statement;

(5) Every voice on the recording is identified;

(6) The person conducting or supervising the interview of the protected person in the recording is present at the proceeding and available to testify or be cross-examined by either party;

(7) The defendant or the attorney for the defendant is afforded an opportunity to view the recording before it is offered into evidence; and

(8) The protected person is available to testify.

*Id*. at p. 139.

Following the viewing of the video, the minor victim testified, after being questioned by the trial judge to insure he knew that difference between the truth and a lie. He was then subjected to cross-examination.

On direct appeal, the Third Circuit Court of Appeals, in denying relief on this claim, found that that the defendant never sought a continuance or mistrial on grounds that he was unable to adequately prepare for trial because counsel had not seen the video. *State v. Duplantis*, 127 So.3d at 152. That court noted that the defendant offered no indication of how he would have prepared different for trial had he viewed the video earlier or how that supposed preparation would have affected the jury in his favor. *Id*. He did not identify any particular prejudice that resulted from not viewing the videotape earlier; he simply contended that it was unfair. *Id*. at 152-53. Because the defendant failed to show any manner in which prejudice resulted or suggested how it may have influenced the verdict, the appellate

court held that any error concerning the introduction of the video into evidence was harmless. *Id.* at 153.

A federal habeas court has no jurisdiction to determine whether the state court reasonably applied its rules of evidence. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Wood v. Quarterman*, 503 F.3d 408, 414 (5th Cir. 2007). A trial court ruling on an evidentiary issue provides a basis for federal habeas relief only if it so prejudiced the petitioner that it rendered the trial unfair. *Estelle*, 502 U.S. at 67-68. Petitioner has failed to make this showing and, accordingly, he is not entitled to relief on this claim.

**D. The verdict of the jury is unconstitutional, as it was not unanimous.**

Next, Petitioner argues that the non-unanimous jury verdict was unconstitutional. The jury convicted the defendant by an eleven-to-one verdict. Petitioner acknowledges that the law at the time of his conviction required ten jurors to concur in a verdict, but nevertheless argues that the case should be "remanded for a new trial in which only a unanimous verdict will be accepted." [Rec. Doc. 1-4, p. 20]

Louisiana recently amended its constitution to require unanimous jury verdicts in all criminal cases. But under the law applicable at the time of Petitioner's trial, La. Code Crim P. art 782, he could have been convicted by a vote of eleven of twelve jurors.

23

The Supreme Court has long held that the Sixth Amendment, applicable to the states through the Fourteenth Amendment, does not require jury unanimity for state criminal trials. *Womack v. Louisiana*, 2019 U.S. Dist. LEXIS 28812, *16 (W.D. La., Jan. 30, 2019) (citing *Johnson v. Louisiana*, 406 U.S. 356 (1972); *Apodaca v. Oregon*, 406 U.S. 404 (1972) (upholding the validity of non-unanimous jury verdicts for twelve-person juries in Louisiana and Oregon)). But the Court did later hold that a Louisiana conviction by a non-unanimous six-person jury for a nonpetty offense violated the right to trial by jury. *Id.* (citing *Burch v. Louisiana*, 441 U.S. 130 (1979)).

Petitioner can obtain habeas relief on this claim only if that state court adjudication was contrary to or involved an objectively unreasonable application of "clearly established federal law, as determined by the Supreme Court of the United States." *Id.* (citing Section 2254(d)(1); *Renico v. Lett*, 559 U.S. 766 (2010). The justices were unusually divided in their approaches in *Johnson* and *Apodaca*. *See McDonald v. City of Chicago*, 561 U.S. 742 (2010) (describing the various opinions)). Some legal scholars and others take the position that subsequent Supreme Court decisions that discuss how the Bill of Rights apply to the states have undermined *Johnson* and *Apodaca*, but the Supreme Court has thus far denied certiorari in cases that sought to overturn those precedents. *Id.* (citing *Barbour v.*

*Louisiana*, 562 U.S. 1217 (2011), *Herrera v. Oregon*, 562 U.S. 1135 (2011), and *Jackson v. Louisiana*, 572 U.S. 1088 (2014)).

When Supreme Court precedents exhibit a lack of clarity about the applicable principle, obtaining habeas relief is quite difficult. *Id*. at*17 (citing *Kernan v. Cuero*, 138 S. Ct. 4, 9 (2017); *Lockyer v. Andrade*, 538 U.S. 63 (2003)). The Supreme Court decisions we have available on non-unanimous juries support the state court's decision in this case. *Id*. The decisions may be less than clear in rationale and subject to reasonable debate, but that is a long way from making the state court's adjudication contrary to or an objectively unreasonable application of clearly established Supreme Court precedent. *Id*. Habeas relief should be denied.

**E. The sentence of life imprisonment is unconstitutionally excessive.**

Petitioner argues that the trial court erred by imposing the "excessive maximum sentence of life at hard labor for the crime of sexual battery, the first twenty-five years of which are to be served without the benefit of parole, probation or suspension of sentence." Petitioner's counsel asserted this claim on direct appeal. The Louisiana Third Circuit declined to consider the issue because he did not make or file a motion to reconsider his sentence within thirty days of the imposition on same, as required by Louisiana Code of Criminal Procedure Article 881.1(E).

To the extent Duplantis challenges the state courts' compliance with Louisiana's sentencing laws and the Louisiana Constitution, his claim is not the

concern of federal habeas review. *Butler v. Cain*, 327 F. App'x 455, 457 (5th Cir. 2009). Instead, federal courts afford broad discretion to a state trial court's sentencing decision that falls within statutory limits. *Haynes v. Butler*, 825 F.2d 921, 923-24 (5th Cir. 1987); See also, *Turner v. Cain*, 199 F.3d 437, 1999 WL 1067559, at *3 (5th Cir. Oct. 15, 1999) (Table, text in Westlaw). As will be discussed, the sentence imposed upon Duplantis was clearly within the state statutory limits and was not excessive.

When a state sentence is within the statutory limits, a federal habeas court will not upset the terms of the sentence unless it is shown to be grossly disproportionate to the gravity of the offense. *See Harmelin v. Michigan*, 501 U.S. 957, 993-95 (1991); *Solem v. Helm*, 463 U.S. 277, 290-91 (1983). "[W]hen a threshold comparison of the crime committed to the sentence imposed leads to an inference of 'gross disproportionality,'" a court then considers (a) the sentences imposed on other criminals in the same jurisdiction; and (b) the sentences imposed for commission of the same offense in other jurisdictions. *Smallwood v. Johnson*, 73 F .3d 1343, 1346-47 (5th Cir. 1996); *McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992).

In *Solem v. Helm*, 463 U.S. 277 (1983), the Supreme Court held that the Eighth Amendment "prohibits not only barbaric punishments, but also sentences that are disproportionate to the crime committed." "This constitutional principle is tempered, however, by the corollary proposition that the determination of prison

26

sentences is a legislative prerogative that is primarily within the province of legislatures, not courts." *United States v. Gonzales*, 121 F.3d 928, 942 (5th Cir. 1997) (*citing Rummel v. Estelle*, 445 U.S. 263, 274-76 (1980)). "[C]ourts must grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes." *Gonzales*, 121 F.3d at 942 (quotation marks omitted). "[T]herefore, it is firmly established that successful challenges to the proportionality of punishments should be exceedingly rare." *Id*. (quotation marks omitted). If the sentence is not "grossly disproportionate," in the first instance, the inquiry is finished. *Gonzales*, 121 F.3d at 943.

Interpreting *Solem* in light of intervening precedent, the United States Fifth Circuit Court of Appeals has set forth the framework to be used when analyzing a claim that a sentence is excessive:

> [W]e will initially make a threshold comparison of the gravity of [petitioner's] offenses against the severity of his sentence. Only if we infer that the sentence is grossly disproportionate to the offense will we then ... compare the sentence received to (1) sentences for similar crimes in the same jurisdiction and (2) sentences for the same crime in other jurisdictions.

*McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992).

The Fifth Circuit has noted that *Rummel v. Estelle*, 445 U.S. 263 (1980), "establishes a benchmark for disproportionate punishment under the Eighth Amendment." *Gonzales*, 121 F.3d at 943. In *Rummel*, the Supreme Court upheld a petitioner's sentence to life imprisonment for obtaining $120.75 under false

pretenses. The sentence was imposed under a Texas recidivist statute and took into account petitioner's prior convictions for fraudulent use of a credit card and passing a forged check. The Fifth Circuit observed:

> We acknowledge that the distinction between constitutional sentences and grossly disproportionate punishments is an inherently subjective judgment, defying bright lines and neutral principles of law. Nevertheless, we can say with certainty that the life sentence approved in *Rummel* falls on the constitutional side of the line, thereby providing a litmus test for claims of disproportionate punishment in violation of the Eighth Amendment.

*Gonzales*, 121 F.3d at 943 (footnote omitted).

Duplantis was charged with one count of sexual battery, in violation of La. R.S. 14:43.1, which provides a sentencing range of twenty-five years to life imprisonment, with the first twenty-five to be served without the benefit of parole, probation or suspension of sentence.  In this case, it was Petitioner's fourth sexual offense involving children under the age of thirteen, and two of the prior three convictions had been pled down from offenses of Aggravated Rape. [Rec. Doc. 15, p. 6]  His sentence fell within the range provided by law. Moreover, his crime, a sexual offense involving a minor, was particularly serious. See, e.g.*, United States v. Lamere*, 337 Fed. App'x 669, 672 (9th Cir. 2009) ("This court has generally recognized the grave harm resulting from sexual crimes relating to children."). In light of those considerations, as well as the finding in *Rummel* that a life sentence was not excessive for the relatively minor offenses involved in that case, this Court

cannot conclude that petitioner's life sentence for the grave offense of sexual battery is grossly disproportionate under federal law. Because the sentence is not grossly disproportionate, this Court's "inquiry is finished." *Gonzales*, 121 F.3d at 942.

### F. Ineffective Assistance of Counsel Claims

Finally, Duplantis contends that he was denied effective assistance of trial counsel, a violation of his Sixth Amendment rights. He contends that a conflict existed between he and his court-appointed counsel, as she failed to spend enough time with him to adequately prepare his defense, that she was ineffective because she failed to file a motion to quash the amended indictment for lack of a true bill endorsement by the grand jury foreman, failed to quash the indictment, which was not brought in open court by the grand jury, and finally, because she failed to fully and sufficiently cross-examine the minor victim as to his prior videotaped interview and trial testimony.

Claims of ineffective assistance of counsel are gauged by the guidelines set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). Under *Strickland*, a petitioner must demonstrate: (1) that his counsel's performance was deficient, requiring a showing that the errors were so serious such that he failed to function as "counsel" as guaranteed by the Sixth Amendment, and (2) that the deficiency so prejudiced the defendant that it deprived him of a fair trial. *Id*. at 2064. The first prong does not require perfect assistance by counsel; rather,

petitioner must demonstrate that counsel's representation fell beneath an objective standard of reasonableness. *Id*. Judges have been cautioned towards deference in their review of attorney performance under *Strickland* claims in order to "eliminate the potential distorting effect of hindsight." *Rector v. Johnson*, 120 F.3d 551, 563 (5th Cir. 1997) (*quoting Strickland*, 104 S.Ct. at 2065) (quotations omitted). Accordingly, the court should "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*.

The second prong requires the petitioner to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 104 S.Ct. at 2055-56. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 2056. In other words, the petitioner must show prejudice great enough to create a substantial, rather than conceivable, likelihood of a different result. *Pape v. Thaler*, 645 F.3d 281, 288 (5th Cir. 2011) (*quoting Cullen v. Pinholster*, 563 U.S. 170, (2011)). "Both of [*Strickland's*] prongs must be proven, and the failure to prove one of them will defeat the claim, making it unnecessary to examine the other prong." *Williams v. Stephens*, 761 F.3d 561, 566-67 (5th Cir. 2014).

The trial court summarized that Duplantis' primary complaint against his court appointed counsel, Ms. Linda Veazey, was that she failed to spend enough time with him to adequately prepare for trial. He alleges that she failed to file various

pre-trial motions or interview specific witnesses who could have corroborated certain aspects of the defense theory of the crime and argued that she was not prepared to fully and sufficiently cross-examine the minor victim. Denying relief on this claim, following a November 16, 2015 hearing on Petitioner's Application for Post-Conviction Relief, the trial court noted that Duplantis acknowledged that Ms. Veazey met with him three times after his arrest while he was being housed in Vermilion Parish. *See* Rec. Doc. 5-1, p. 39. He was subsequently transferred to the Allen Parish Correctional Center and had no further meetings with her until he was returned to Vermilion Parish for trial. *Id*. However, both Duplantis and Ms. Veazey testified that during the time he was in Allen Parish, they corresponded. *Id*. at p. 40. They both testified that they conferred regarding potential defense witnessed, all but one who testified at trial. *Id*. The trial court found that with respect to a specific claim that Ms. Veazey did not present the testimony of one of Duplantis' former probation officers who allegedly would have testified that he had given Duplantis permission to live across the street from the victim provided he was never alone with the victim, Ms. Veazey testified that she interviewed this potential witness and learned that he would not have testified in the matter suggested by the defendant and, given that testimony, the Court found that she did not breach a duty owed to Duplantis and, even if the failure to call the officer was deemed to be a breach, there was no resulting prejudice.

31

Next, Duplantis argues that trial counsel was ineffective for failing to file a Motion to Quash the amended indictment.  The trial court, denying this claim, found that Duplantis' failed to present any evidence establishing grounds for successfully quashing the indictment, there was no breach or resulting prejudice.

This Court finds that the trial court did not err in its findings, and as such, federal habeas relief is not warranted with respect to these claims.

### *Conclusion and Recommendation*

For the foregoing reasons,

**IT IS RECOMMENDED THAT** the instant application be **DENIED** and **DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from**

attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue. See 28 U.S.C. § 2253(c)(2). A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

In Chambers, Lafayette, Louisiana July 8, 2019.

_____
**PATRICK J. HANNA**
**UNITED STATES MAGISTRATE JUDGE**